## F. H. E. OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

## FLEMING–KIMBELL CORPORATION v. SAME.

## No. 11167.

Circuit Court of Appeals, Fifth Circuit.

May 4, 1945.

For former opinion, see 147 F.2d 1002.

Harry C. Weeks, of Fort Worth, Tex., for the taxpayers.

Warren F. Wattles and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the Commissioner.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

A vigorous motion for rehearing, supported by an exhaustive brief, contends that the decision is wholly wrong, and especially that the cost of drilling the "dry hole" should have been deducted as an expense of business or as a loss realized. Upon an assertion that the whole oil producing business is affected by the argument of our opinion to the effect that the option to deduct the drilling cost of a successful well, as given by Regulation of the Treasury Department, is contrary to the statute and wholly void, we permitted briefs to be filed by thirty counsel for other oil producers as amici curiae.

No new and controlling decisions are cited. It still appears that only the Tenth Circuit has squarely considered the validity of the option in the light of the statute and has sustained it, and that was before the introduction into the statute of percentage depletion on oil wells. With this exception all the appellate courts, including the Supreme Court and this court, have treated the option as allowable, because no one attacked it. The decisions about other related provisions of the Regulations are not in point. They express no considered opinion on the option itself. What is new in the briefs is the assertion, which we take to be true, that probably a billion dollars of corrections might result in expense deductions in tax returns made within the statutes of limitation, if the option is invalid. Also new is the contention that in the Second Revenue Act of 1940 there is language now found in Internal Revenue Code, Section 711(b) (1) (I), as amended in the Excess Profits Amendments of 1941, 26 U.S.C.A. Int.Rev.Code, § 711 (b) (1) (I), which refers to the deduction in the past of intangible drilling and development costs in drilling oil wells, the argument being that Congress evidently had in mind the option to do this given by the various Regulations, and did not disapprove. Certain it is that the option has been acted on widely, and for many years, and courts and Congress have done nothing drastic about it. A total annulment of it, retroactive in its operation, would have grave effect on persons not before this court. We should therefore go no further than our duty takes us in deciding this case; we should decide it only.

While we see no fault in our previous reasoning, and think the former opinion a right one to have been rendered twenty

years ago, we find it unnecessary to consider so broadly the validity of the option, and now confine our decision, as the majority of the Tax Court did, to a holding that wells drilled to get an oil property, or to get a better and more extensive interest in it, are so clearly capital investments in that property that no part of their cost can be called an expense of business. The question whether a successful oil well on property which the driller fully owns is a permanent improvement, as is an artesian water well on a ranch, or a tunnel for a railroad, or the underground part of a large building, in all of which the cost of "making a hole in the ground" is plainly a part of the capital investment, we can and do lay to one side. The question we must decide is whether one who does not own an oil property and who agrees to make a well to obtain an interest in it, (as in Hardesty v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 843, and Hunt v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 697), or as in this case, who has an interest for a few days only *unless* he makes a well, and makes it in order to enlarge and extend his temporary interest, thereby makes a capital' investment which cannot be a mere business expense under the statute. The answer is in both cases, yes. He is putting out his money to acquire property, and acquires it. It is not an ordinary expense of business, as these parties asserted it was in their petitions to the Tax Court, and the Regulation cannot make it such; or what is worse, give the taxpayer *an option* to treat it as such.

Now as to the "dry hole". If we were discussing "permanent improvements", which like other capital investments are not ordinary business expenses, of course the fact that the well did not reach oil and was abandoned would be most material. If one drilled such a well on his own property, he would probably have either a right to a deduction as for an expense or as a business loss, for he has only a valueless "hole in the ground". This alternative was claimed in the petition to the Tax Court. It was denied because the well, while drilled on a lease assigned to the taxpayer, was drilled *as the consideration for the assignment,* the contract binding the assignee to make the well in a stated time, and providing that if he did not his assignment should terminate. He drilled the well as the price of his interest in the

property. Although this well failed, he still has the assigned lease. We understand that there are other producing wells on the same lease. But if the property he thus acquired proves valueless, he must realize his loss by a disposition of it, just as though he had paid money for it.

The motion for a rehearing is denied and the judgment of the Tax Court stands affirmed.

WALLER, Circuit Judge (specially concurring).

I think that the Tax Court was justified in holding that the cost of drilling a well on each of the nine tracts was a part of the consideration for the assignment of the lease to the taxpayer where, as in this case, the lease could not be kept alive by the payment of an annual rental but required drilling, termination, or reversion within a certain time, so long as the holdings of this Court in Hardesty v. Commissioner of Internal Revenue, 5 Cir., 127 F. 2d 843, Hunt v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 697, Stansylvania Oil & Gas Co. v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 743, and Walsh v. Commissioner of Internal Revenue, 5 Cir., 135 F.2d 701, are unreversed.