RPARRO, J.
This case involves an appeal by the Louisiana Department of Revenue from a district court judgment granting a motion for summary judgment in favor of a corporate taxpayer and ordering' it to refund $909,241.08 and $222,895.53' in taxes that were paid under protest, based on a finding that the taxpayer’s income from its interest in an unincorporated association was income from a partnership under LSA-R.S. 47:287.92. For the following reasons, the judgment is affirmed.

Factual Background and Procedural History

In 1986, Pure Transportation Company was merged into Unocal Pipeline Company (Unocal), formerly Union Alaska Pipeline Company, which held at that time less than a two percent interest in Trans Alaska Pipeline System (TAPS), a pipeline system used to transport crude oil from one point in the state of Alaska to another. By virtue of its status as an unincorporated association, TAPS was treated as a tax partnership for federal and Louisiana income tax purposes and was, therefore, subject to the provisions of Subchapter K (Sections 701-777) of Subtitle A of' the Internal Revenue Code (IRC) and similar Louisiana tax law provisions. Pursuant to the applicable provisions of the IRC and Louisiana tax laws, the owners of TAPS, including Unocal’s predecessor-in-interest, made-a decision to “elect out” of the application of the provisions of Subchapter K and similar state law provisions, and this election was approved by the appropriate authorities.
The dispute in this case arises over how Unocal should treat, on its Louisiana corporation income tax return, the income that it receives as a result of its ownership interest in the TAPS tax partnership in light of its election. Louisiana corporation income tax law, LSA-R.S. 47:287.92(B)(6),[1] requires that income from a partnership be treated differently from other corporate income, in that such income must be allocated to the state where that income was earned. On the other hand, if the income from TAPS does not constitute income from a partnership, it is apportioned among those states in which Unocal does business.
| ^Unocal advocated that its share of income from TAPS constitutes income from a partnership. Because that income was earned by TAPS in Alaska, Unocal submits that its share of that income should be allocated to Alaska for corporation income tax purposes. On the other hand, the Louisiana Department of Revenue (Department) maintains that because the owners of TAPS elected out of the provisions of Subchapter K of the IRC and similar state law provisions, the income Unocal received from its interest in TAPS was not partnership income for state income tax purposes. Therefore, the legal issue to be resolved in this case is whether the income generated by a partnership that elects out of the requirements of Sub-chapter K of the IRC and similar state law provisions still constitutes income from a *397 partnership for purposes of LSA-R.S. 47:287.92(B)(6).
In reporting the income it received from TAPS in 1986 and 1987, Unocal apportioned such income on its corporation income tax return for those' years and paid the resulting taxes. During its initial audit, the Department determined that the income Unocal received from TAPS constituted income from a partnership pursuant to LSA-R.S. 47:287.92. Therefore, such income for 1986, 1987, and 1988 was considered by the Department to be allocable. Pursuant to the Department’s determination, Unocal filed a request for a refund with the Department for the taxes that had erroneously been paid for 1986, 1987, and 1988. Subsequently, the Department changed its position, recognizing that only the income received from TAPS in 1986 constituted income from a partnership.
With Unocal’s claim for a refund pending before the Louisiana Board of Tax Appeals (Board) and its failure to report the income received from TAPS as appor-tionable income on its Louisiana corporation income tax returns for 1989, 1990, 1991, and 1992, the Department (in 1996) proposed to assess taxes, together with interest, against Unocal for those years in the amount of $869,488.29. By notice dated May 5, 1997, the Department proposed to assess additional interest against Unocal in the amount of $39,752.79. Unocal paid these amounts to the Department under protest and subsequently filed a petition in district court for a refund of taxes paid | ¿under protest.[2] In 1998, the Department proposed to assess additional taxes and interest in the amount of $220,895.53 against Unocal for 1993.[3] Unocal again paid the amount under protest and filed an action in district court for the return of this amount.[4] Unocal’s two actions for a refund in the district court were consolidated for trial.
Prior to trial, Unocal filed a motion for summary judgment seeking to have the district court determine the classification of the income received by it from TAPS. The hearing on this motion was delayed pending the resolution by the Board of Unocal’s refund claim concerning its 1987 and 1988 payment of taxes, which involved the same issue as the consolidated cases pending before the district court. In written reasons for judgment, the Board concluded'that Unocal’s election under Section 761 of the IRC did not change TAPS’s status as a partnership for the purposes of LSA-R.S. 47:287.92(B). Therefore, the Board vacated the Department’s assessment'for the 1987 and 1988 tax years, insofar as the Department sought to tax a portion of Unocal’s income from TAPS, on the theory that such income did not qualify as partnership income under LSA-R.S. 47:287.92(B).
In light of the Board’s decision in its favor on the issue in question, Unocal renewed its motion for summary judgment, prompting the Department to file a cross-motion for summary judgment. Following a hearing on these matters, the district court, like the Board, held that the income Unocal had received from its interest in TAPS constituted income from a partnership under LSA-R.S. 47:287.92. Accordingly, the district court ruled that Unocal was entitled to refunds of $909,241.08 and $222,895.53, which had been paid by it *398 under protest. Thus, a judgment was entered granting Unocal’s motion for summary judgment and denying the cross-motion filed by the Department. The Department appealed.

\ Summary Judgment

Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The parties concede that there are no genuine issues of material fact. Instead, their competing motions for summary judgment are based on their entitlement to summary judgment as a matter of law. Therefore, we must determine whether Unocal was entitled to judgment in its favor as a matter of law.

Discussion

The Louisiana corporation income tax law, LSA-R.S. 47:287.2 et seq., imposes a tax on the Louisiana taxable income of corporations. LSA-R.S. 47:287.11. “Louisiana net income” means net income[5] which is earned within or derived from sources within the State of Louisiana. LSA-R.S. 47:287.67. Louisiana net income or loss for a corporation is determined by applying the allocation and apportionment provisions of the Louisiana corporation income tax law to the corporation’s gross income, allowable deductions, and net income for a .taxable year, as determined and computed pursuant to such law. LSA-R.S. 47:287.77. Concerning the determination of Louisiana net income, LSA-R.S. 47:287.91 states that the Louisiana net income of a corporation is the [fiSum produced by combining the net allocable income or loss, as provided in LSA-R.S. 47:287.93, and the net apportionable income or loss, as provided in LSA-R.S. 47:287.94, when the result is more than zero. The classification of gross income as allocable or apportionable is addressed in LSA-R.S. 47:287 .92, which, in pertinent part, provides:
A. All items of gross income, not otherwise exempt, shall be segregated into two general classes designated as allocable income and apportionable income.
B. Allocable income. The class of gross income to be designated as “allo-cable income” shall include only the following:
* * *
(6) Income from estates, trusts, and " partnerships.
*399 [[Image here]]
C. Apportionable income. The class of income to be designated as “ap-portionable income” shall include all items of gross income which are not properly includable in allocable income as defined in this Section.
The classification of income determines the method of taxation for such income. Allo-cable income is allocated for tax purposes directly to the state where the income is earned or derived, while apportionable income is subject to taxation in Louisiana based on an apportionment percentage regardless of where such income, is derived. See LSA-R.S. 47:287.93-94. Therefore, Louisiana taxes allocable income only if earned in Louisiana, whereas Louisiana taxes a percentage of all apportionable income without regard to its geographic source. Apportionable income is the default category, inasmuch as it includes all items of gross income not specifically included in allocable income. LSA-R.S. 47:287.92(0); Dow Hydrocarbons & Resources v. Kennedy, 96-2471 (La.5/20/97), 694 So.2d 215, 216.
The parties in this case disagree as to the classification of the income in question. Unocal urges that it is properly classified as allocable, and the Department submits that it is apportionable income. The resolution of this dispute hinges on whether the income received by Unocal from TAPS constitutes income from a partnership for purposes of LSA-R.S. 47:287.92(B)(6).
For purposes of Louisiana tax law, the term “partnership” includes a syndicate, |7group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of the chapter on income tax (LSA-R.S. 47:21 through 300.10), a corporation or a trust or estate. LSA-R.S. 47:220.3(A). Louisiana Revised Statute 47:220.3(A) further allows for the members of certain unincorporated organizations to elect out of the partnership provisions found in the subpart in which it is located — Subpart D of Part II of the chapter on income tax, LSA-R.S. 47:201-220.3.[6] In pertinent part, LSA-R.S. 47:220.3(A) provides:
Under regulations the collector may, at the election of all members of an unincorporated organization, exclude such organization from the application of all or part of this subchapter, if it is availed of,
(1) for investment purposes only and not for the active conduct of a business, or,
(2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted, if the income of the members of the organization may be adequately determined without the computation of partnership taxable income.
Since the provisions of this statute were taken almost verbatim from federal law, it is proper for this court to examine the federal authorities interpreting the applicable law in determining the scope and effect of LSA-R.S. 47:220.3(A). See LSA-R.S. 47:287.701(L)(l)(c); Standard Oil Company of New Jersey v. Collector of Revenue, 210 La. 428, 27 So.2d 268, 271 (1946).
The Internal Revenue Code is found in Title 26 of the United States Code Annotated, with the laws governing income taxes being found in Subtitle A of that title. Chapter 1 of Subtitle A is entitled “Normal Taxes and Surtaxes” and contains Sub-chapters A through Y. The laws governing partners and partnerships are found in *400 Subchapter K. See I.R.C. §§ 701-777. Subchapter .K was enacted in 1954 as a result of the confusion in the existing tax treatment of partners and partnerships. Stackhouse v. United States, 441 F.2d 465, 467 (5th Cir.1971). Prior to the enactment of Subchapter K, an extensive line of authority developed with respect to tax treatment of oil and gas joint operating agreements. Initially, the Internal |sRevenue Service (IRS) held that such arrangements lack a joint profit motive. Eventually, it was determined that they were partnerships for federal tax purposes, even though they lacked a joint profit motive. James M. Boyle & Sheri L. Everson, Tax Planning for Domestic & Foreign Partnerships, LLCs, Joint Ventures & Other Strategic Alliances 2004: Alliances not in Partnership or Corporate Form, 604 Practising Law Institute Tax Law and Estate Planning Course Handbook Series: Tax Law and Practice PLI Order Number 3106, 749, 790-791 (June 2004), citing Bentex Oil Corporation v. Commissioner of Internal Revenue, 20 T.C. 565, 1953 WL 76 (1953).
If a joint effort is characterized as a partnership for tax purposes, its formation, operation, and disposition will be subject to numerous relatively complex tax rules, primarily found in Subchaptér K.[7] Partnership returns must be filed (normally on a calendar-year basis),[8] and most tax elections must be made at the partnership level and are binding on all partners, even where the elections are detrimental to some of the partners. William Sidney Smith & Ronald L. Mountsier, Partnerships: When Should the Election to be Excluded from the Partnership Tax Provisions be Made? 16 Tax’n for Lawyers 156 (Nov./Dec.1987).
For purposes of Subchapter K, a partnership includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. In pertinent part, Section 761(a) of Subchapter K provides for an exclusion from Subchapter K as follows:
Under regulations the Secretary may, at the election of all the members of an unincorporated organization, exclude such organization from the application of all or part of this subchapter, if it is availed of—
(1) for investment purposes only and not for the active conduct of a business,
(2) for the joint production, extraction, or use of property, but not for the purpose of selling services or property produced or extracted, or
|fl(3) by dealers in securities for a short period for the purpose of underwriting, selling, or distributing a particular issue of securities[.]
By making an election under this section, TAPS was relieved of computing and reporting its income on a partnership level. The Department submits that the declaration by the owners of TAPS that they were able to compute their income without the necessity of computing partnership taxable *401 income[9] resulted in the income received by them relative to their ownership interest in TAPS not being treated as partnership income.
The wording of Section 761(a) expressly limits the scope of the election to “this subchapter,” that is, Subchapter K. There is no congressional authority for exclusion from the application of other IRC sections relative to partnerships. Bryant v. Commissioner of Internal Revenue, 399 F.2d 800, 806 (5th Cir.1968). In other words, an election under Section 761(a) does not cause the organization to cease to be a partnership for all purposes under the IRC. Martin J. McMahon, Jr., The Availability and Effect of Election Out of Partnership Status under Section 761(a), 9 Va. Tax Rev. 1, 30 (1989). If Congress had intended the election to apply for all income tax purposes, it would have provided for an election not to be treated as a partnership for purposes of “this subtitle,” rather than “this subchapter.” McMahon, 9 Va. Tax Rev. at 30.
Furthermore, Section 7701(a)(2) of Chapter 1, Subtitle F of the IRC, entitled “Procedure and Administration,” defines partnerships generally for purposes of the IRC as a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation. For purposes of the IRC, the term partnership is not limited to the common law meaning of partnership, but is broader in its scope and includes groups not commonly called partnerships. Johnson v. Commissioner of Internal Revenue, 60 T.C.M. (CCH) 603 (1990). The election under Section 761(a) does not operate to change the nature of the entity. A partnership remains a partnership; the exclusion simply prevents the application of Subchapter K. The partnership remains intact and other sections of the |inIRC that are not interdependent with Subchapter K are applicable as if no exclusion existed. Bryant, 399 F.2d at 807. Because an unincorporated organization working under a joint operating agreement for the joint production, extraction, or use of property is treated as a partnership for income tax purposes, it necessarily follows that the income Unocal received from its ownership interest in TAPS was income from a partnership, as defined in Section 7701(A)(2), even though it had elected out of partnership status for purposes of Sub-chapter K.
Accordingly, we conclude that TAPS was a tax partnership as contemplated by LSA-R.S. 47:220.3(A).[10] Furthermore, we disagree with the Department’s position that the income to TAPS’s owners does not constitute income from a partnership for purposes of LSA-R.S. 47:287.92(B). Therefore, we conclude that Unocal was entitled to summary judgment as a matter of law.

Decree

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal in the amount of $1,718.04 are assessed to the Louisiana Department of Revenue.
AFFIRMED.

. Several of the Louisiana tax statutes mentioned in this case were amended during the tax periods in question, but for all practical purposes, the statutory language at issue remained unchanged. Thus, we will refer to the current version of these statutes in discussing the law applicable to this case.

. Unocal’s suit was assigned docket number 439,297.

. The amounts allegedly paid under protest are slightly different from the amount of the refunds ordered by the district court. These differences have not been challenged on appeal.

.Unocal’s second suit was assigned docket number 455,644.

. Net income of a corporation for a taxable year means the taxable income of the corporation computed in accordance with federal law for the same accounting period and under the same method of accounting, including statutorily required accounting adjustments, subject to the modifications specified in the Louisiana corporation income tax law. LSA-R.S. 47:287.65.

. Notably, LSA-R.S. 47:287.92(B) is not found in this subpart.

. Similar provisions are found in LSA-R.S. 47:201 through 220.3.

. Every partnership (as defined in Section 761(a) of the IRC) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by Subtitle A, and such other information for the purpose of carrying out the provisions of Subtitle A as the Secretary may by forms and regulatipns prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in taxable income if distributed and the amount of the distributive share of each individual. I.R.C. § 6031(a).

. See I.R.C. § 761(a).

. By its election on the state level, TAPS merely sought to prevent the application of LSA-R.S. 47:201 through 220.3 to it.